20-1946 from the Eastern District of Arkansas, Veronica Grindley v. Andrew Saul Mr. Nielsen? I'm sorry, Mr. Stevens?  May it please the court, I'm Mickey Stevens, I'm representing Veronica Grindley, Ms. Grindley is seeking that the court reverse and remand a denial of her claim for Social Security Disability benefits. Her claim was denied following an administrative hearing and the ALJ found that while she had multiple severe impairments, she was still able to do that work, she still retained the functional capacity to do light work with additional limitations. The ALJ found that she had the severe impairments of fibromyalgia, discoid lupus, hypertension, personality disorder, anxiety disorder, and affective disorder. The primary disabling condition here physically for Ms. Grindley is fibromyalgia and that it's diagnosed mostly on the symptoms, there's not any blood test or objective testing or that kind of thing to confirm the diagnosis, but it is a medically recognized diagnosis, it's something that thousands and thousands of people seek and receive medical treatment for, it's been recognized by both the courts and the Social Security Administration as a serious condition, and it can often be a disabling condition, and the records in this case document significant, diffuse, widespread pain occurring frequently, her doctors have described it using terms as moderate to severe. She has other symptoms of fibromyalgia besides pain, her doctors describe severe fatigue, she has psychological symptoms, which it's difficult to determine I think whether those are due to fibromyalgia or another significant diagnosis she has of borderline personality disorder, but she's got a wide array of symptoms and her doctors have diagnosed her with fibromyalgia, she's been treated for it, referred to a rheumatologist, and again the pain is well documented throughout her records, and in this case it appears that the agency didn't sufficiently analyze or the denial of her claim was based pretty much on the lack of these objective findings, and on page 7 of the decision it states that overall objective findings in this case fail to provide strong support for the claimant's allegations of disabling symptoms and limitations, and as I said that's not unusual with fibromyalgia to have a lack of objective findings, and both the courts and the Social Security Administration themselves have acknowledged that claims should not be denied simply on the lack of objective findings in this case. The agency's required to perform a longitudinal analysis of the evidence, and when that's done in this case shows a history of serious symptoms and treatment, and we believe that lack of, or the failure to properly consider those, and thoroughly consider those allegations of pain, which are consistent with her, with the documented evidence in the medical record regarding her course of treatment, and those things during the record, but we believe that the reliance solely on the lack of objective evidence here was legal error. Counsel, what is there in the record in terms of the medical records supporting the, or the pain allegations? What kind of encounters did she have with doctors? I know it didn't seem to be much after 2014, but can you cite to something to indicate that she's getting treatment and that there is some evaluation of her condition? Yes, Your Honor, there were multiple allegations of, as I said, things like the records use the words significant, diffuse, widespread, constant, moderate to severe pain, and those are used, those type of terms are used repeatedly throughout her records. As far as something more specific, her doctor, Dr. Heck, completed two forms, and that's a little bit problematic because they're not really consistent with each other. The first one he completed, I think in September of, I want to say 2014, placed some significant limitations on her, and just going by what he says, you know, she would be limited to less than sedentary work. He completed another one several months later, that was in 16, I think he did that in 17, he completed another one, and it put her at a little bit higher level as far as lifting and carrying and those sorts of things, but he also said he felt like she was unable to work due to arthritis and psychological issues. So like I said, those, it's kind of problematic there, but those, his first opinion certainly would limit her to less disabled. The second opinion, even still, while there's some differences there, he still, his opinion, I think he put something on there about she's not even, she's not expected to improve. So he still, I think, felt like she was disabled, even though some of the responses there puts her at a higher level, and there's no explanation for those inconsistencies in the forms. They primarily just asked about physical issues, and he wrote that she was disabled or not able to work due to her arthritis and psych issues, but the questionnaire didn't contain anything specifically about psychological issues. Counsel, are the tender point analyses still kind of a standard evaluation of fibromyalgia? Yes, your honor, they are, and that's recognized by Social Security in their ruling on the issue, and that's, there's some confusion here in this case on that issue too. Right, I understand the ALJ said there weren't that many in, but the physician says there's 18 out of 18, so please address that inconsistency. Yeah, the decision says, I think says at one point, says that fibromyalgia points were tender, and the actual quote from the record is that they were very tender, the reference there that he cited. Of course, it doesn't address how many tender points, I think, so Ms. Grinley testified that she had had tender point testing on more than one occasion, I think, and that there were 18 tender points, so we have references from the record that there were, you know, that there were very tender tender points, but it's not clear as to when, and indications there may have been more testing, but it's not clear when that other testing was or what the results were, and we have, had Ms. Grinley's testimony on that, so that's an issue. I think that's a crucial issue, because as you mentioned, that is considered very important in the diagnosis of fibromyalgia. It's a crucial issue, I think, that needs more clarification, that needed more clarification, I think the two forms from Dr. Heck, those go to the residual functional capacity, which is, of course, probably the most important issue in one of these cases, and that conflicting information from the treating physician, I think it needs to be clarified. I think that's a crucial issue. That's the only, regarding the physical issues, that's the only issue, and as we cited in our brief there, this court held that the opinions of the non-examining consultants cannot constitute substantial evidence, and if we take Dr. Heck's opinions out of the record, there is a consultative exam opinion on the psychological issues, but there's no other opinion on the physical issues. I think there was some evidence in the record that Ms. Grinley failed to comply with some prescribed medical treatment. What weight should be given to that? Your Honor, that is certainly a consideration in these cases, the compliance with treatment. However, the non-compliance, I think in this case, was pretty limited. The agency cited three incidents in their brief, and they were pretty minor. One of them just involved her Plaquenil for the lupus she's taken. The other was she was taking a couple of medications, but not taking a couple of other medications, so I think it was probably a process of trying to figure out what was working and what wasn't there, and the other incident, I couldn't locate that, so I think they're pretty insignificant in the overall picture of the case. She has sought treatment on a regular and ongoing basis and has taken many different medications, so I think the non-compliance is a minor issue here, and she does have, as I said, the borderline personality disorder, the mental illness, and unfortunately, compliance issues are not rare with people that have mental health issues, but I think the record shows that even when she is compliant, and the important part, of course, is that when she's compliant with her medication, she continues to have the disabling symptoms. Now, I wanted to address the substance abuse issue that the agency raised. She has had some substance abuse in her past there, but the agency has, well, the regulations address it, and the agency has a social security ruling on the issue of substance abuse, and the ALJ, if the ALJ believes that to be a disabling condition, first, he should find it to be a severe impairment, and then he has to do an analysis, has to determine whether it's material to the disability issue, and then there has to be kind of a dual analysis that he has to look at whether the claimant would be disabled in the absence of the substance abuse and whether they're disabled with the substance abuse. None of that was done here. The ALJ didn't even find it to be a severe impairment, so that tells us that the ALJ didn't seriously limit her abilities and capacities. If he did, he would have found it to be a severe impairment, so we didn't even get the first step here in that, but now the agency has argued that that's why she can't work, and so that's clearly inconsistent with the ALJ's decision, and I think the record shows, while there is substance abuse, I think, again, the record shows that that's not the primary cause of her disability, and she does have a diagnosis of polysubstance abuse, but she's also got the fibromyalgia, the borderline personality diagnoses, which are significant diagnoses, so I think the record shows that she's disabled by those conditions, despite any substance abuse. Counsel, you're within your rebuttal time. Oh, I'm sorry. Go ahead and answer Judge Shepard's question. Quick question. Related to substance abuse, but really kind of a different focus, the ALJ noted history of the physician prescribing substance and lifestyle changes, like stop smoking, and then the use of hydrocodone, not necessarily from the standpoint of substance abuse, but in the area of lifestyle changes. How would you address that? Well, your honor, the smoking issue is something that the agency cited in their brief, and they cited a case, but that case dealt with a person whose, I think, primary problem was COPD, which is directly influenced by smoking, and of course, you know, I'm not going to deny that a person's overall health is influenced by smoking, but in that case, really distinguished, I think, that when that's important is when there's a kind of a direct link between the smoking and the person's condition, and there was a note where the doctor said that smoking could make her lupus worse, but there's no indication that the doctor said anything about a direct relationship to fibromyalgia or the borderline personality disorder. Of course, you probably wouldn't have a link to that for sure, but so I think, and you know, as far as making lifestyle changes, those are difficult for all of us. I mean, I myself need to be healthier and get more exercise, and it's a difficult thing for us to do, and when somebody's struggling with depression, anxiety, those sorts of things, it's even more difficult for them to make those changes. So, you know, and she, at one point, she tried to go back to work, which shows, you know, she, I think, shows she was trying to improve her situation and do things, but she wasn't able to successfully do that, and so while, you know, it'd be better if she didn't smoke, but I think without that link to the condition, other than maybe the lupus, I don't think it's a significant issue here. All right, counsel, you're well within your rebuttal time. You can reserve the remainder of your time. I would like to do that, yes. All right. Ms. Curtis. Good morning. May it please the court. My name is Kizzi Wanda Curtis, and I represent Andrew Saul, the Commissioner of Social Security. This case is primarily about the ALJ's evaluation of fibromyalgia, and despite weak evidence of limitations stemming from fibromyalgia, the ALJ assigned an extremely restrictive residual functional condition to the ALJ, and the ALJ's analysis of Ms. Grindley's fibromyalgia was more than sufficient to support the ALJ's conclusion that while a severe impairment, it did not manifest in disabling limitations. In support of his RFC finding, the ALJ cited evidence including her normal physical examinations, a history of conservative treatment, issues with non-compliance, her work activity, and her activities of daily living. Ms. Grindley had the burden of proving additional limitations, and she did not. While the ALJ considered Ms. Grindley's subjective complaints, in addressing the record as a whole, he considered her examinations. Throughout the record, examinations showed full motor strength, full range of motion, no tenderness in her back, a normal gait, and no swollen joints or extremity weakness or edema, which was consistent with his residual functional capacity. Counsel, why would, it seems that the ALJ discounted her treating physicians evaluation, and that's something that needs to be justified medically and not just by the ALJ second-guessing. So, what evidence did the ALJ use to discount the treating physician's opinion? In discounting that opinion, well, first off, he rendered two opinions that were about seven months apart. He did one in September 2016 and another in May 2017. And with the first one, September 2016, it was a checkbox opinion where he said she was limited to sedentary work. But one thing the ALJ pointed out about the opinion was that there was no explanation of the reasoning for this opinion. And in comparing this opinion with the doctor's treatment notes, for instance, he did an examination in September 2016, and it was while she complained of fatigue and pain, she had a fair response to medication, and there were no findings to explain the reason for the sedentary opinion. And also, the ALJ compared it with the record as a whole, which showed that she had a history of normal examinations, she had responded to conservative treatment despite issues with noncompliance, and she was able to perform some activities of daily living. And as well, she had looked for work during the relevant period and also engaged in some work activity. As to the May 2017 opinion, Dr. Heck found that she was able to range of light work in the residual functional capacity. However, the ALJ found that Dr. Heck's opinion regarding postural and manipulative limitations was inconsistent with his own examination notes. Indeed, Dr. Heck's contemporaneous treatment notes were unremarkable except for a finding that Ms. Grindley had diffused hypopigmentation due to her lupus, and he did not document, oh, and this was the issue with the hypopigmentation was because she had not been taking her lupus medication, and he didn't document any significant findings relative to her fibromyalgia diagnosis. Turning back to the ALJ's RFC analysis, the ALJ pointed out in relation to her conservative course of treatment that she had no aggressive therapy, she was never hospitalized, and she didn't have any documented mobility issues that would have supported a lesser residual functional capacity. She also had significant issues with noted she was smoking despite the fact that it made her lupus symptoms worse. In addition to that, she only took her psychiatric medications about three times a week, and she also abused drugs. In January 2016, she tested positive for cocaine and opiates, and in 2017, she stated that she had self-medicated with her boyfriend's hydrocodone and had not gone more than 30 to 60 days without taking unprescribed opiates. Ms. Curtis, I had a question about that. What consideration can we give to the substance abuse here since the ALJ did not mention it as a reason for denying the claim? Well, as we already noted, he did not find it a severe impairment. With regard to her substance abuse, the clearest barrier that it gave to employment was the fact that she stated herself that she could not pass a drug test if she was abusing substances, but this court has found that an inability to find work due to an employer's hiring practices does not support a finding of an employee. In relation to what her doctors said about her drug habit, they also said that her use of medications such as codeine, hydrocodone, oxycodone, and others did not benefit her in relieving her fibromyalgia symptoms and should be avoided. Even so, even in light of the noncompliance, she was still responsive to a conservative course of treatment. Given her historically normal physical examinations, conservative treatment, and lack of support for disabling pain, there was reason for the ALJ to find her of the range of light work he did. Another thing he considered was that Ms. Grindley worked with her impairments. In function reports that she completed in association with her claim, she said her daily activities consisted of waking up, drinking coffee, and then going job hunting. She also noted that listed Joblink as a place that she went on a regular basis to look for work. In June 2016, she reported that she was applying for a job at McDonald's, which her therapist encouraged her to do, and then thereafter, she worked a short while at McDonald's. In August 2016, she reported working at another place, MAPCO, and in February 2017, she reported putting in multiple applications with an employment agency. All of this was in direct contradiction to her claim that she was disabled because disability, the basis of it is that you cannot work, and her pursuits show that she clearly retained the ability to work. The ALJ also- apply for work, but that doesn't prove she could actually do it. That might be so, yes, your honor, but this was just one of the factors that the ALJ then based this decision entirely on the fact that she was looking for work and working. He also considered the other factors that I've discussed, and in addition to that, he also considered that she was able to care for animals, do dishes, laundry, drive, and shop, and the activities also supported the ALJ's residual functional capacity for a reduced range of light work. The ALJ also weighed the opinion of state agency medical experts in reaching his findings, and contrary to Ms. Greenlee's claim, the ALJ did consider this opinion, however, he considered it along with the record as a whole, with the factors I've already considered, as well as Dr. Heck's opinion, as already discussed. The ALJ noted that he gave some weight to these opinions, but he did not rely on entirely on these opinions. He noted that these individuals are experts in disability evaluation, and they provided citation to evidence to support their conclusion that Ms. Greenlee retained the ability to perform work at the light exertion. They noted that the records overall did not support her claim that she was disabled and that she did have conditions such as lupus, hypertension, and fibromyalgia, but there were the issues with non-compliance, her history of conservative treatment with a good response, the normal medical findings, her activities all tended to show that she still retained the ability to perform light work. In relation to the ALJ's consideration of her drug use, as already stated, it was not significantly limiting to the degree that it exacerbated her mental symptoms or her symptoms from fibromyalgia, and thus it was not a severe impairment that would have presented a barrier to work, and so the ALJ did not proceed in doing an analysis regarding her substance abuse. In conclusion, your honors, the threshold for substantial evidence is not high. The ALJ's analysis showed examination findings, conservative care with use of oral medications that Ms. Greenlee worked and obtained employment. She retained the ability to perform some activities and the ALJ considered opinions that were supportive of his residual functional capacity. All of this met the commissioner's burden of providing substantial evidence to support his conclusion that Ms. Greenlee could perform a range of unskilled light work. Ms. Greenlee has not proven any additional limitations, therefore we ask the appeal. Thank you. Thank you, Ms. Curtis. Mr. Stephens, your rebuttal. I will give you a minute. Thank you, your honor. Just quickly, I strongly disagree with the characterization of Ms. Greenlee's exam as exams as normal findings. The decision cites a lot of benign findings and the commissioners previously conceded that a lot of these types of findings are not of particular significance when there's a chronic condition. The decision selectively cites these things and here's a good example. The decision cites to a record where Dr. Chee noted that he did not see any signs or symptoms of systemic lupus. The very next sentence in that record states that he believed her symptoms were more suggestive of fibromyalgia. So we got the first sentence that says she doesn't have lupus, but the second pattern throughout this decision, a lot of times things are cited, a normal finding is cited and then on the same page there's a reference to significant pain that's not cited. So substantial, you can't get substantial evidence that way. The court has held that an ALJ may not ignore findings that don't fit his conclusion and that's what we have that happened here. And as far as conservative treatment, the counselor for the agency kept using the word a short list of treatments that includes things like massage and I can't remember the other things, but there's nothing radical or unusual in those. In that list, it's a pretty small list of some pretty simple things and even medication. Dr. Heck noted that there's not a really highly effective medication for these symptoms. So and then there's other factual errors. The ADLs that counselor mentioned are mischaracterized. She has significant difficulty with those. She bathes every few days. She doesn't cook. She tries to do laundry and that's what her function report said. She tries to do these things. She has great difficulty with them, but in the opinion those were translated as she doesn't have any problem with ADLs. So a decision can't be based on substantial evidence when it's got those kinds of mischaracterizations and errors and my time's up. Thank you, your honor. Thank you, Mr. Stevens. Thank you also, Ms. Curtis. The court appreciates both counsel's argument presentations to us today. You've been helpful and we'll continue to review the case and render a decision in due course. Thank you.